IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Thomas Stewart, Jr., | ) | Case No. 5:23-cv-02951-JDA-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Jeremy Stewart, Karen Tuttle, | ) | |
| Stephen Duncan, Bryan Stirling, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a motion to dismiss filed by Defendants Stephen Duncan, Karen Tuttle, and Bryan Stirling ("Moving Defendants"). [Doc. 5.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings. On October 24, 2023, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the motion be granted in part and denied in part. [Doc. 18.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do. [*Id.* at 11.] On November 7, 2023, Moving Defendants filed objections to the Report [Doc. 19]; on November 14, Plaintiff filed a reply [Doc. 26]; and Moving Defendants filed a reply to Plaintiff's reply the same day [Doc. 27].[1]

**STANDARD OF REVIEW**

---

[1] On November 16, 2023, the Clerk entered a Clerk's entry of default as to Defendant Jeremy Stewart ("Defendant Stewart"). [Doc. 24.] Plaintiff has since filed a motion for damages hearing as to Defendant Stewart. [Doc. 29.] That motion remains pending. On February 20, the case was reassigned to the undersigned. [Doc. 33.]

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## **BACKGROUND**

The Magistrate Judge appropriately set out the factual allegations relevant to this case:

> At all times relevant to the allegations contained within Plaintiff's Complaint, Plaintiff was incarcerated at the Goodman Correctional Institution ("Goodman"). Plaintiff alleges that Defendant Jeremy Stewart was a sergeant at Goodman, Defendant Tuttle was a lieutenant at Goodman, Defendant Duncan was the warden at Goodman, and Defendant Stirling was the director of the South Carolina Department of Corrections ("SCDC") at the time of the events complained of within Plaintiff's Complaint. Plaintiff alleges that in May 2020, while Plaintiff was an inmate at Goodman, other inmates made multiple threats against Plaintiff's life and well-being, and he was placed in protective custody.

>Plaintiff alleges that on May 28, 2020, at around 8:50 p.m., Defendant Jeremy Stewart came to Plaintiff's cell for count, and while there, stared at him in an uncomfortable way. Shortly thereafter, Defendant Jeremy Stewart returned to Plaintiff's cell and made the comment, "I hope you're not planning on sleeping in all that." Plaintiff also alleges Defendant Jeremy Stewart asked him what his plans were for the evening. Later in the evening, Plaintiff alleges Defendant Jeremy Stewart returned, and when Defendant learned Plaintiff smoked, Defendant returned with a pack of cigarettes. Early that next morning, at approximately 1:50 a.m., Plaintiff alleges Defendant Jeremy Stewart demanded Plaintiff perform oral sex on him, and Plaintiff complied because he was fearful for his safety and worried about the repercussions if he refused. Plaintiff alleges he immediately reported the incident to Defendant Karen Tuttle and also gave her a towel containing physical evidence of the incident. Plaintiff alleges Defendant Tuttle was responsible for overseeing Defendant Stewart, as well as other officers, but that she failed to adequately supervise Defendant Stewart or otherwise ensure the safety of inmates.
>
>Plaintiff alleges all Defendants knew that Plaintiff was in protective custody due to the threats of other inmates, that Plaintiff was vulnerable and that he feared for his life and safety. Plaintiff further alleges that Defendants Tuttle, Duncan and Stirling knew or should have known that Defendant Stewart posed a threat to inmates, and one or more Defendants knew or should have known that Defendant Stewart's continual visits to Plaintiff's cell were inappropriate. Plaintiff alleges as a result of Defendants' deliberate indifference, he suffered both mental and psychological injuries. Plaintiff further alleges Defendants failed to provide Plaintiff with adequate mental health care, causing additional injuries.

[Doc. 18 at 2–3 (internal citations omitted).]

Plaintiff alleges claims under 42 U.S.C. § 1983 for violation of the United States Constitution (the "federal claim") and, possibly, the South Carolina Constitution (the "state claim") based on Defendants' deliberate indifference. [Doc. 1-1 ¶¶ 35–43.]. He seeks compensatory and punitive damages, as well as court costs and attorneys' fees. [*Id.* at 10.]

## APPLICABLE LAW

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts

5

that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

**Eighth Amendment Deliberate Indifference**

The Eighth Amendment is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). The Eighth Amendment's prohibition on "cruel and unusual punishments" imposes certain basic duties on prison officials. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). These include maintaining humane conditions of confinement, including the provision of adequate medical care and "reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotation marks omitted).

Under the Eighth Amendment, corrections officers have "a duty to protect prisoners from violence" because "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 833, 834 (alteration and internal quotation marks omitted). However, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (internal quotation marks omitted). A plaintiff must satisfy a two-part test, consisting of both an objective and a subjective inquiry, for liability to attach.

First, the inmate "must show that he was incarcerated under conditions posing a substantial risk of serious harm." *Id.* (internal quotation marks omitted); *see Farmer*, 511 U.S. at 834.  This objective inquiry "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  Second, an inmate must show that the prison official had a "sufficiently culpable state of mind," which, in this context, consists of "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted); *Odom v. S.C. Dep't of Corrs.*, 349 F.3d 765, 770 (4th Cir. 2003).  This subjective inquiry requires "evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014).  The defendant must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  An inmate can, however, prove an official's actual knowledge of a substantial risk "in the usual ways, including inference from circumstantial evidence." *Id.* at 842.  In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*  In the end, "the test is whether the [prison officials] know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (internal quotation marks omitted).

### **MOVING DEFENDANTS' MOTION, THE REPORT, AND MOVING DEFENDANTS' OBJECTIONS**

In their motion to dismiss, Moving Defendants argue that they are entitled to

dismissal of Plaintiff's claims because Plaintiff failed to allege that Moving Defendants had sufficient personal involvement to create the requisite causal connection to Plaintiff's injuries. [Doc. 5-1 at 6–10.] They also maintain that, to the extent he attempts to allege supervisory liability, Plaintiff fails to allege that Moving Defendants had actual or constructive knowledge that Defendant Stewart posed a pervasive and unreasonable risk of injury to inmates or that he was engaging in sexual misconduct. [*Id.* at 10–11.] They further argue that no viable cause of action exists for claims of violation of the South Carolina Constitution. [*Id.* at 11–12.] Finally, they contend that Plaintiff is barred by 42 U.S.C. § 1997e(e) from recovering compensatory damages because he has not alleged a physical injury. [*Id.* at 12.]

The Magistrate Judge recommends that Moving Defendants' motion be granted to the extent that Plaintiff attempts to allege a claim for violation of the South Carolina Constitution, and that the motion to dismiss be denied as to Plaintiff's federal claim. [Doc. 18.]

In their objections, Moving Defendants allege that the Magistrate Judge erred in denying their motion to dismiss as to Plaintiff's federal claim.[2] [Doc. 19.] The Court

---

[2] Moving Defendants make two specific arguments: (1) that the Magistrate Judge erred in recommending denying the motion concerning the federal claim as against Duncan and Stirling because she failed to appreciate that the Complaint falsely alleged that Goodman was one of the 13 SCDC facilities reviewed in the "security and staffing audits of the SCDC system" [Doc. 1-1 ¶ 17] that the Complaint references [Doc. 19 at 3–4]; and (2) that the Magistrate Judge erred in recommending denying the motion to dismiss as to Tuttle because the allegation that Tuttle was Defendant Stewart's supervisor was false as shown by a deposition taken of Defendant Stewart's in a different case [*id.* at 4–7]. As will be explained, upon conducting a de novo review, the Court concludes that it need not address these specific arguments.

Neither party has objected to the Magistrate Judge's recommendation that the claim alleging violation of the South Carolina Constitution should be dismissed as against all Moving Defendants. Having reviewed the Report, the record in this case, and the applicable law regarding the claim, the Court finds no clear error. Thus, the Court accepts

8

agrees with Moving Defendants that Plaintiff has failed to state a claim as to either his federal or his state claims and that both claims against Moving Defendants should be dismissed.

**DISCUSSION**

Section 1983 provides a private cause of action for constitutional violations by persons acting under color of state law.  However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

   Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation,

---

the Report with respect to that claim and incorporates that portion of the Report by reference.

custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (internal quotation marks omitted).  As to the first element, "[c]onstitutional torts . . . require a demonstration of both but-for and proximate causation." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).  Thus, to establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendant "acted personally" to cause the constitutional violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); see *Williamson v. Stirling*, 912 F.3d 154, 171–72 (4th Cir. 2018) (noting that a plaintiff must affirmatively show that the official acted personally in violating the plaintiff's constitutional rights and finding that certain defendants were entitled to summary judgment because "they lacked sufficient personal involvement in the alleged constitutional deprivations").

As noted, Moving Defendants argue that Plaintiff has not plausibly alleged any wrongdoing by them that is causally connected to Plaintiff's injuries, nor has he alleged the requisite actual or constructive knowledge on their part of conduct by Defendant Stewart that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff that Plaintiff would need to establish supervisory liability.  [Doc. 5-1 at 6–11.]  The Court agrees on both points.  The Court will begin by discussing the allegations against Tuttle and then will address the allegations against Duncan and Stirling.

**Federal Claim as against Tuttle**

In his memorandum opposing Moving Defendants' motion to dismiss, Plaintiff's response to the contention that there was no causal connection between Plaintiff's

10

injury and any action of Tuttle's is quite brief.  [Doc. 9 at 9.]  It is essentially limited to the following reference to allegations in the Complaint:

> [F]ollowing the rape, Plaintiff gave Tuttle a towel containing physical evidence.  Further, Tuttle, as shift lieutenant, was responsible for overseeing Defendant Stewart and failed to adequately supervise Defendant Stewart, ensure that inmates were accounted for and safe, and otherwise take reasonable measure[s] to ensure [Plaintiff's] protection from harm.

[*Id.*]  The Magistrate Judge agreed with Plaintiff that the Complaint adequately alleges Tuttle's actions caused Plaintiff's injuries.[3]  [Doc. 18 at 5.]  The Court disagrees, however.

Neither of the referenced allegations adequately causally connects any conduct of Tuttle's to the rape.  *See Hopper v. Barr*, No. 5:18-cv-01147-MGL-KDW, 2019 WL 3938076, at *9, *12 (D.S.C. July 31, 2019) ("To state a plausible § 1983 . . . claim against any particular public official, a 'causal connection' or 'affirmative link' must exist between the conduct of which the plaintiff complains and the official sued. . . .  This court may not infer personal involvement by [the defendants] where there are no clear factual allegations showing that they did or did not do anything that personally led to any injury suffered by Plaintiff.  To do so would violate the pleading rules set out in the *Iqbal* and *Twombly* cases because the allegations do not allow the court to draw the reasonable inference that either defendant is liable for the misconduct alleged by the Plaintiff."), *Report and Recommendation adopted by* 2019 WL 3935181 (D.S.C. Aug.

---

[3] Although the Magistrate Judge concluded that Plaintiff adequately states a federal claim against Tuttle apart from any supervisory liability theory [*see* Doc. 18 at 4–7], it is not entirely clear what the Magistrate Judge bases her conclusion on, although the after-the-fact knowledge that Tuttle gained of the rape appears to have been significant [*see id.* at 5 ("Even more compelling, Plaintiff alleges Defendant Tuttle was made aware of the incident directly when he told her what happened while she was shift lieutenant.")].

11

20, 2019).  First, for obvious reasons, Tuttle's learning of the rape *after the fact* does not indicate that Tuttle's conduct bore some causal connection to the assault.  Plaintiff's second point also does not reference any conduct of Tuttle's that allowed the rape to occur; rather, it is simply an assertion that Tuttle failed to adequately supervise Defendant Stewart.  With Plaintiff not having alleged any actual conduct of Tuttle's that bears any causal connection with the occurrence of the rape, the Court therefore turns next to the question of whether Plaintiff has adequately alleged supervisory liability as to Tuttle.

Because there is no doctrine of respondeat superior in § 1983 claims, *Monell*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983).  A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) *that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff*; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[4]

---

[4] Stated differently,

> [A]bsent an allegation that a named-defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in

12

*Id.* (emphasis and footnote added).

Here, Plaintiff does not plausibly allege that Tuttle had actual or constructive knowledge that Defendant Stewart was engaged in conduct that posed a pervasive and

> some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983.

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court may have entirely abrogated supervisory liability in *Bivens* actions. *See Iqbal*, 556 U.S. at 693 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."). A *Bivens* action "is the federal analog to suits brought against state officials under . . . § 1983." *Id.* at 675–76 (alteration and internal quotation marks omitted). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions. *See Jones v. Corr. Care Sols.*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Iqbal*, supervisory liability may no longer be a viable § 1983 claim).

13

unreasonable risk of constitutional injury to citizens like Plaintiff.  Indeed, Plaintiff does not allege that Defendant Stewart ever took any out-of-the-ordinary action before the evening of May 28, 2020.  Plaintiff alleges that on that evening, Defendant Stewart "came to [Plaintiff's] cell in the B-Wing of Dorm 5 for count" and spoke with him at that time.  [Doc. 1-1 ¶¶ 20–21.]  Plaintiff further alleges that over the course of the evening, Defendant Stewart had three additional interactions with Plaintiff [*id.* ¶¶ 22–23] before entering Plaintiff's cell at 1:50 a.m. and demanding oral sex [*id.* ¶ 24].

Plaintiff alleges that "at least one defendant knew or should have known that [Defendant] Stewart made multiple trips to [Plaintiff's] cell, that [Defendant] Stewart's purpose in visiting [Plaintiff's] cell multiple times in the middle of the night was inappropriate, and that [Defendant] Stewart should not have been making these visits." [*Id.* ¶ 29.]  However, even if the allegation were made as to Tuttle instead of simply "at least one defendant," the allegation is conclusory.  Plaintiff alleges no factual support for the allegation that Tuttle should have known that Defendant Stewart spoke to Plaintiff a few times during that evening,[5] let alone that doing so was somehow inappropriate or indicated that Defendant Stewart posed a pervasive and unreasonable risk of constitutional injury.  For the same reason, Plaintiff's allegation that Tuttle "knew or should have known that [Defendant] Stewart posed a threat to inmates, such as [Plaintiff]" [*id.* ¶ 28] is, at most, a "formulaic recitation" of the first element of supervisory liability as opposed to "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Accordingly, Plaintiff has failed to plausibly allege the first element of supervisory liability.  *See Mitchell v. Stirling*, No. 1:17-cv-2086-PMD-SVH,

---

[5] Plaintiff does not allege that any of the "visits" prior to the assault occurred in the middle of the night.  [Doc. 1-1 ¶¶ 20–23.]

14

2018 WL 2328150, at *4 (D.S.C. May 23, 2018) ("Since Plaintiff has not alleged that Defendants knew that their subordinates posed a pervasive and unreasonable risk of constitutional injury, he has failed to allege facts that causally connect Defendants to his injuries.").

For all of these reasons, the Court rejects the Magistrate Judge's recommendation concerning Plaintiff's federal claim as against Tuttle, and the Court grants Moving Defendants' motion to dismiss both claims as to Tuttle.[6]

**Federal Claim as against Duncan and Stirling**

In Plaintiff's memorandum opposing the motion to dismiss, Plaintiff's response to Moving Defendants' contention that there was no causal connection between Plaintiff's injury and any action by Stirling or Duncan is limited to the single, conclusory sentence that "Duncan's and Stirling's failure to ensure adequate staffing, security measures, and supervision directly led to [Plaintiff] being raped by a SCDC employee." [Doc. 9 at 9.] However, Plaintiff identifies no factual allegations in the Complaint that attempt to causally link any staffing or security inadequacies at Goodman to the rape at issue here.

As to Defendants Duncan and Stirling, the Complaint's allegations relevant to the causation argument are as follows:

---

[6] Because the Court concludes on this basis that Plaintiff fails to state a federal claim against Tuttle under a supervisory liability theory, the Court declines to address Moving Defendants' alternative arguments for dismissal of the federal claim as against Tuttle. However, the Court does note that given that Plaintiff makes no factual allegations supporting his conclusory allegations that Tuttle knew or should have known about Defendant Stewart's conduct prior to Plaintiff informing Tuttle that he had been assaulted, Plaintiff also has not plausibly alleged that Tuttle was deliberately indifferent to his safety, as he would need to do to state an Eighth Amendment failure-to-protect claim. *See Farmer*, 511 U.S. at 834; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

15

>   17.  Prior to the events giving rise to this action, the South Carolina State Legislature and SCDC commissioned and conducted security and staffing audits of the SCDC system.  These audits revealed a correctional system in chaos due to extreme shortages in staff and a lack of oversight by the SCDC administration, including [Defendants].  Investigators concluded that these conditions created an environment in which inmates were exposed to danger, extreme violence, and cruel and unusual punishment.  Upon information and belief, the results of these audits were known to SCDC staff, administrators, supervisors, and correctional officers, including [Defendants].
>
>   18.  Prior to and during the time period in question, defendants Duncan and Stirling failed to ensure that the adequate and/or specific number of properly trained officers/employees/guards were located at [Goodman].  Defendants Duncan and Stirling knew or should have known that their failure to provide adequate security measures would result in unsafe conditions for the inmate population, including [Plaintiff.]
>
>   . . .
>
>   30.  As a direct and proximate result of [Defendants'] deliberate indifference to [Plaintiff's] health and safety, [Plaintiff] suffered both mental and psychological injuries.

[Doc. 1-1 ¶¶ 17–18, 30.][7]

Even assuming that these allegations plausibly allege that Duncan and Stirling acted with deliberate indifference toward Plaintiff's safety in making decisions that resulted in the understaffing of Goodman, Plaintiff has not plausibly alleged that

---

[7] Plaintiff also alleges that "Duncan[] and Stirling knew or should have known that [Defendant] Stewart posed a threat to inmates, such as" Plaintiff, and that "at least one defendant knew or should have known that [Defendant] Stewart made multiple trips to [Plaintiff's] cell, that [his] purpose in visiting [Plaintiff's] cell multiple times in the middle of the night was inappropriate, and that [Defendant] Stewart should not have been making these visits."  [Doc. ¶¶ 28–29.]  As noted, there is no allegation in the Complaint that any of the exchanges between Defendant Stewart and Plaintiff prior to the assault occurred in the middle of the night, and none of these allegations are satisfactorily explained to raise Plaintiff's right to relief above a speculative level.  *See Twombly*, 550 U.S. at 555.

inadequate staffing at Goodman played any role in causing Plaintiff's injuries. As noted, Plaintiff's allegations were that Defendant Stewart was present for the count at 8:50 p.m. hours before the assault and that he returned to Plaintiff's cell three times that evening prior to the assault. [*Id.* ¶¶ 22–23.] Plaintiff does not allege any reason why a guard having multiple short exchanges with a prisoner over the course of one evening would have alerted anyone to a potential danger to the prisoner even had there been significantly more staff at Goodman. Nor does he allege any other way that having that additional staff members or reasonable security procedures would have prevented the assault. Indeed, he does not even allege any particular deficiency with regard to the relevant area of the prison or the particular night in question. *See Roman v. Cnty. of Hudson*, No. 23-2811 (CCC) (AME), 2024 WL 1757150, at *9 (D.N.J. Apr. 23, 2024) (regarding claims that inadequate monitoring and staffing of a jail resulted in a detainee's suicide, dismissing partly because the complaint did "not sufficiently allege how the monitoring and staffing were allegedly inadequate, or plausibly assert a link between those deficiencies and the harm alleged"). Without such information, Plaintiff's factual allegations are not enough to raise a right to relief above the speculative level on the question of whether Plaintiff's injuries were causally related to understaffing at Goodman. *See Twombly*, 550 U.S. at 555. *Cf. Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018) (holding the plaintiff failed to allege a causal link between understaffing and inadequate care provided by nursing home staff).

Because Plaintiff has not alleged any actual conduct by Duncan or Stirling that bears any causal connection with the occurrence of the rape, Plaintiff would have to allege supervisory liability as to these Defendants to state a § 1983 claim. However,

17

Plaintiff fails to adequately allege supervisory liability against Duncan and Stirling for the same reason that he fails to adequately allege supervisory liability against Tuttle; namely, that Plaintiff does not plausibly allege that Duncan and Stirling had actual or constructive knowledge that Defendant Stewart was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff. *See Shaw*, 13 F.3d at 799.

Accordingly, the Court rejects the Magistrate Judge's recommendation concerning the federal claim as against Duncan and Stirling. Rather, the Court grants Moving Defendants' motion to dismiss as to both claims against these Defendants.[8]

---

[8] As noted, Moving "Defendants contended in support of their motion that because Plaintiff has not adequately alleged physical injury, his claims are barred by 42 U.S.C. § 1997e(e) [Doc. 5-1 at 12], which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of *physical injury or the commission of a sexual act* (as defined in section 2246 of Title 18)," 42 U.S.C. § 1997e(e) (emphasis added). The Magistrate Judge rejected the argument based on her conclusion that Plaintiff adequately pled more than a de minimis physical injury by virtue of alleging that he was forced to perform oral sex. [Doc. 18 at 9–10 n.3.] The Court agrees with the Magistrate Judge that this statute does not bar Plaintiff's claims for mental and emotional injury, but for a different reason. Namely, Plaintiff need not allege any physical injury to avoid the statutory bar because he has alleged the commission of a sexual act, *see* 18 U.S.C. § 2246(2)(B) (defining "sexual act" to include "contact between the mouth and the penis").

Finally, the Court notes that Plaintiff alleges that Defendants failed to provide Plaintiff with adequate medical care after the assault. [Doc. 1-1 ¶ 31.] The Magistrate Judge does not specifically address Moving Defendants' arguments as they relate to this aspect of Plaintiff's claim. Nonetheless, Plaintiff does not plead any specific facts alleging that Moving Defendants had any causal connection to his denial of medical care either. [Doc. 1-1.] Accordingly, Moving Defendant's motion to dismiss is granted as to any claim concerning medical care.

## CONCLUSION

Wherefore, based upon the foregoing, the Court accepts in part and rejects in part the Report and Recommendation of the Magistrate Judge, and Moving Defendants' motion to dismiss [Doc. 5] is GRANTED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin<br>United States District Judge

May 13, 2024
Florence, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.